UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

Injah Tafari,

         Plaintiff,      **Hon. Hugh B. Scott**

                       06CV331
      v.            Consent

                      **Decision**
                       **&**
                      **Order**

Glenn Goord et al. ,

         Defendant.
_____

Before the Court is the defendants' motion for summary judgment (Docket No. 49).

**Background**

The plaintiff, Injah Tafari ("Tafari") filed the instant complaint originally asserting four claims, including First Amendment retaliation claims against defendants Robert Kyle ("Kyle"), Matthew Mann ("Mann"), Edward McEvoy ("McEnvoy"), Francis Dougherty ("Dougherty"), C.O. Turnbull ("Turnbull"), Michael Bishop ("Bishop"), E. Powell ("Powell"), Taylor Roberts ("Roberts") and Martin Kearney ("Kearney"); failure to protect claims against defendants Glenn Goord ("Goord"), Edward Donnelly ("Donnelly"), David Unger ("Unger"), Mary Dean ("Dean"), G. Monahan ("Monahan") and Lt. Wanke ("Wanke"); due process claims against Susan Schumacher ("Schumacher") and Donald Selsky ("Selsky"); and an excessive force claim against

1

defendants Kyle, Mann, McEvoy, Dougherty, Turnbull, Bishop, Gunn, Gibson and Zydel.[1] In an Order dated June 27, 2008, Tafari was directed to address various deficiencies in the complaint or to amend the complaint. (Docket No. 11). In response, the plaintiff advised the Court that he did not wish to amend his complaint and, instead wished to proceed only as to the excessive force claims against defendants Kyle, Mann, McEvoy, Dougherty, Turnbull, Bishop, Gunn, Gibson and Zydel. (Docket No. 12). The claims set forth in the complaint, with the exception of the excessive force claims, were dismissed. (Docket No. 13).

With respect to the excessive force claims, Tafari asserts that on May 26, 2003 he was ordered to the wall for a pat frisk by Kyle. Tafari states that "without warning, defendant Kyle punched the plaintiff in the right ear, causing bloody discharge." (Docket No. 1 at page 9). The plaintiff asserts that McEvoy then struck him in the lower leg with his baton; Kyle allegedly kicked Tafari in the head; Mann purportedly punched the plaintiff repeatedly in the right side of his face, McEvoy similarly allegedly punched Tafari in the face; while Dougherty is alleged to have been kicking Tafari in his legs. Defendants Kyle, Mann, McEvoy, Dougherty, Turnbull and Bishop are alleged to have continued to kick and stomp the plaintiff while he was handcuffed and laying on the floor. (Docket No. 1 at page 10). Zydel is alleged to have told the others, "that's enough" just before purportedly grabbing Tafari and punching him in the face. The plaintiff asserts that he was then escorted to SHU by Gunn and Gibson, who along the way, allegedly punched the plaintiff in the mid-section and slammed his head into the wall. (Docket No. 1 at page 10).

---

[1] The complaint was initially dismissed pursuant to the "three strikes" rule under 28 U.S.C. §1915(g). (Docket No. 3). Upon appeal to the Second Circuit, the case was re-instated. (Docket No. 8).

The defendants assert a different version of the May 26, 2003 incident. Turnbull states that he was Hall Captain on the date of the incident and that he notified B-Block officers to take Tafari out of his cell (he was in keeplock) for recreation. According to Turnbull, it is policy to frisk all keeplock inmates going to the yard for recreation. (Docket No. 59 at ¶ 9). Kyle ordered Tafari to go to the wall for a pat frisk. Tafari allegedly complied but began yelling profanities. (Docket No. 52 at ¶5). During the pat frisk, Kyle asserts that Tafari "removed himself from the wall and struck [him] in the left shoulder with his elbow." (Docket No. 52 at ¶ 6). Turnbull asserts that Tafari "aggressively resisted" Kyle's attempt to frisk him. (Docket No. 59 at ¶ 7). Turnbull states that he was not involved in the frisk or the process of restraining Tafari. (Docket No. 59 at ¶ 11). As Tafari and Kyle struggled, defendants allege that Mann, Dougherty and McEvoy came to assist Kyle in gaining control of Tafari. (Docket No. 52 at ¶ 9). Kyle asserts that he saw what appeared to be a homemade handcuff key fall from Tafari's hair. (Docket No. 53 at ¶ 11). Kyle states that he suffered injuries as a result of the incident, including abrasions on his elbow, a swollen right knee cap, and a stretched left Achilles tendon. (Docket No. 52 at ¶ 16). Bishop states that he also saw the object fall from Tafari's hair, and that he gained control of the object. (Docket No. 53 at ¶ 9). Bishop states that he was not involved in the frisk or in obtaining control of Tafari. (Docket No. 53 at ¶ 12). Dougherty asserts that he assisted the other officers in an effort to obtain control of Tafari. Dougherty asserts that he was injured during the incident, suffering back pain which radiated up to his right shoulder. (Docket No. 54 at ¶ 14). Mann asserts that he also came to the assistance of Kyle and helped to gain control of Tafari. (Docket No. 57 at ¶ 5-6). Mann asserts that Tafari bit his right thumb during the incident and that Mann had to strike the right side of Tafari's face to get Tafari to release his thumb from Tafari's teeth.

(Docket No. 57 at ¶¶8-10). McEvoy similarly states that he came to Kyle's assistance and helped to gain control of Tafari. He asserts that after issuing several orders for Tafari to release Mann's thumb from Tafari's clenched teeth, McEvoy struck Tafari in the left side of the face until he released Mann's thumb. (Docket No. 58 at ¶¶7-9). Zydel states that by the time he arrived, Tafari was on his back biting Mann. Mann and Kyle were able to gain control of the plaintiff's arms and guide them behind his back. At that point, according to Zydel, he placed handcuffs on the plaintiff and escorted him to SHU along with Gibson and Gann. (Docket No. 60 at ¶ 5-7). Gibson states that his only involvement was to escort Tafari to SHU after the incident. Gibson asserts that the escort occurred without incident. (Docket No. 55 at ¶ 5). Similarly, Gunn claims that his only involvement was to escort Tafari to SHU after the incident and that there was no confrontation with Tafari during the escort. (Docket No. 56 at ¶4). Each of the defendants deny that Tafari was assaulted or that excessive force was used.

The defendants have moved for summary judgment (Docket No. 49).

**Summary Judgment Standard of Review**

Summary judgment is appropriate where there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. See Trans Port, Inc. v. Starter Sportswear, Inc., 964 F.2d 186, 188 (2d Cir. 1992) (citing Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The Court must draw all reasonable inferences in favor of the non-moving party and grant summary judgment only if no reasonable trier of fact could find in favor of the non-moving party. See Taggart v. Time, Inc., 924 F.2d 43, 46 (2d Cir. 1991); Howley v. Town of Stratford, 217 F.3d 141 (2nd Cir. 2000). However, the non-moving party must, "demonstrate to the court the existence of a genuine issue of material fact." Lendino v. Trans Union Credit

Information, Co., 970 F.2d 1110, 1112 (2d Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). A fact is material:

> when its resolution would "affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."

General Electric Company v. New York State Department of Labor, 936 F.2d 1448, 1452 (2d Cir. 1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The non-moving party must come forward with enough evidence to support a jury verdict . . . and the . . . motion will not be defeated merely . . . on the basis of conjecture or surmise." Trans Sport, 964 F.2d at 188 (citing Bryant v. Maffucci, 923 F.2d at 982). If undisputed material facts are properly placed before the court by the moving party, those facts will be deemed admitted, unless they are properly controverted by the non-moving party." Glazer v. Formica Corp., 964 F.2d 149, 154 (2d Cir. 1992) (citing Dusanenko v. Maloney, 726 F.2d 82 (2d Cir. 1984). The Court's responsibility in addressing a summary judgment motion is identifying factual issues, not resolving them. See Burger King Corp. v. Horn & Hardart Co., 893 F.2d 525, 528 (2d Cir. 1990). However, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Nippon Fire & Marine Ins. Co., Ltd. v. Skyway Freight Systems, Inc., 235 F.3d 53 (2d Cir. 2000) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

**Eighth Amendment Claims**

Defendants Kyle, Mann, McEvoy, Dougherty, Turnbull, Bishop, Gunn, Gibson and Zydel argue that the plaintiff's Eighth Amendment rights were not violated during the May 26, 2003 incident, as a matter of law.

The Eighth Amendment is violated by unnecessary and wanton inflictions of pain and suffering. Whitley v. Albers, 475 U.S. 312, 320 (1986). The test of whether prison officials have violated the Eighth Amendment by using excessive force is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992). The Eighth Amendment is also violated by a prison official's " 'deliberate indifference' to a substantial risk of serious harm to an inmate." Farmer v. Brennan, 511 U.S. 825, 828 (1994). A claim arising under this theory "requir[es] a showing that the official was subjectively aware of the risk." Id.

To establish an excessive force claim, an inmate must satisfy both subjective and objective tests. Hudson, 503 U.S. at 7-8. To satisfy the subjective test, the inmate must show that the prison officials "had a 'wanton' state of mind when they were engaging in the alleged misconduct." Davidson v. Flynn, 32 F.3d 27, 30 (2d Cir.1994) (citing Hudson, 503 U.S. at 7). In analyzing whether such a showing has been made, courts may consider; "the need for the application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley, 475 U.S. at 321). To satisfy the objective test, the inmate must show that the force applied was "sufficiently serious" to establish a constitutional violation. Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 298,

6

(1991)). This inquiry is "context specific, turning upon 'contemporary standards of decency.' " Griffin v. Crippen, 193 F.3d 89, 91 (2d Cir.1999) (quoting Blyden v. Mancusi, 186 F.3d 252, 263 (2d Cir.1999)). One of the factors to be considered is the nature and seriousness of any injury. See Branham v. Meachum, 77 F.3d 626, 630 (2d Cir.1996). Although the plaintiff need not prove a significant injury to make out an excessive force claim, "a *de minimis* use of force will rarely suffice to state a constitutional claim." Griffin, 93 F.3d at 92; Romano v. Howarth, 998 F.2d 101, 105 (2d Cir.1993); James v. Phillips, 2008 WL 1700125 (S.D.N.Y.2008).

The "core judicial inquiry" in cases of alleged excessive force by a prison official is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson, 503 U.S. at 7; Reeb v. Irvin, 2000 WL 914136 (W.D.N.Y. 2000). If the latter, "contemporary standards of decency always are violated" irrespective of whether significant injury is present. "Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury." Hudson, at 9; see also Corselli v. Coughlin, 842 F.2d 23, 26 (2d Cir.1988) (if force used was "unreasonable or excessive," it matters not that injuries were not "permanent or severe"). At the same time, "not every malevolent touch by a prison guard gives rise to a federal cause of action." Hudson, at 9.

Initially, defendants Gunn, Turnbull, Gibson, Bishop and Zydel argue that the complaint should be dismissed as against them based upon a lack of personal involvement. (Docket No. 51 at page 4). In support of this argument, the defendants point to the fact that the Use of Force Report and other documents generated as a result of the incident make no mention of these defendants being involved in the use of force upon the plaintiff. It is well-settled that "personal

7

involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir.1994). As discussed above, however, the plaintiff specifically alleges that each of these defendants participated in the alleged assault by striking him at some point during the incident. The fact that this alleged involvement is not mentioned in the documents generated by the defendants does not resolve the question of fact as to what transpired on May 23, 2003. The plaintiff did not have control over the creation of the Use of Force Report and other documents relied upon by the defendants. To the extent that the defendants seek summary judgment based upon an alleged lack of personal involvement, the motion is denied.

The defendants also assert that Tafari cannot meet his burden to establish either the objective or the subjective elements of his excessive force claim, as a matter of law. The defendants suggest that the plaintiff cannot establish the objective factor, because only *de minimus* force was used to gain control of the plaintiff. The defendants acknowledge that Tafari was examined by Nurse Melanie D'Andrea after the May 23, 2003 incident. Upon examination, Nurse D'Andrea noted that the plaintiff had right eye orbit swelling, bruised right maxillary area, reddened line vertically down cheek, small linear red bruise in plaintiff's mid-nose approximately 1 cm, that was no longer bleeding, reddened abrasions around neck and shoulder, abrasions on his left arm, right ear had a bloody discharge. (Docket No. 51 at page 9). In light of the plaintiff's allegations, and the noted injuries suffered by the plaintiff, the Court cannot conclude, as a matter of law, that Tafari cannot establish the objective element of an excessive force claim.

The defendants also contend that the plaintiff cannot establish the subjective element of an excessive force claim because the defendants only acted in good-faith to restore discipline. (Docket No. 51 at page 11). Once again, a question of fact exists as to the motivation and intentions of the defendants during the May 23, 2003 incident. If the trier of fact were to accept as true the plaintiff's allegations – that the defendants attacked him without provocation and as he was defenseless – the fact finder could conclude that the defendant officers use of force was not a good faith effort to restore discipline, but was used maliciously and sadistically to cause harm.

In light of the above, questions of fact exist as to how the altercation on May 23, 2003 took place, the extent to which the defendants used force, and whether the defendants used force to restore order or maliciously and sadistically to cause harm. Thus, the motion for summary judgment is denied.

**Qualified Immunity**

The defendants contend that they are entitled to qualified immunity.(Docket No. 51 at page 12). However, as discussed above, questions of fact exist as to the conduct of the defendants during the May 23, 2003 altercation. An individual's right to be free from excessive force is a well-settled principal in American jurisprudence. Drawing all reasonable inferences in favor of the plaintiff, as the Court is required to do in the context of the instant motion, the Court cannot conclude that the officers involved would be entitled to qualified immunity. Chaney v. Koupash, 2008 WL 5423419 (N.D.N.Y.,2008)(It was clearly established that inmates had an Eighth Amendment right to be free from excessive force. Thus, accepting all of plaintiffs'

allegations about the physical assaults as true, qualified immunity cannot be granted.); Allen v. City of New York, 480 F.Supp.2d 689 (S.D.N.Y.,2007)(qualified immunity denied where a reasonable juror could find that defendant's failure to intervene was objectively unreasonable).

In light of the above, the motion for summary judgment based upon qualified immunity is denied.

## Conclusion

The motion for summary judgment is denied consistent with the above.

So Ordered.

/s/ Hugh B. Scott
United States Magistrate Judge
Western District of New York

Buffalo, New York
February 18, 2011